Chief Judge Traxler, and may it please the court. This case concerns an affirmative defense that the defendant didn't raise as required in his initial answer, didn't raise in his motion to dismiss or in his initial summary judgment motion, and didn't raise in any way until almost two years into this litigation. So that defense was waived. And the principal question here is whether the defendant can unwaive that defense, what can unring the bell by filing a new answer. And the answer to that is no. Now the state's argument, as I understand it, is that as long as it had the right to in that answer. And that's wrong. And the key case on this is this court's decision in Peterson against Airline Pilots Association. You agreed to let him file the answer. Your Honor, we consented to the filing of an amended answer, yes, but that is a distinct issue. Or whoever was handling this case, did they read it first? No, it was never supplied to us. That's clear from the record. Why didn't you ask for it? Your Honor, I'm not sure that there'd be any obligation from opposing counsel to provide us with a copy. If I'm filing an amicus brief in this court, and I have to seek the consent of counsel, and I go to what would be the opposing counsel and request consent, and they say, well, my decision on whether to consent to your amicus filing depends on you letting me see a draft of it first. I don't think I'd be able to show them that. That's a little different when you're a party, though. Well, I don't think it's different in a material respect, and I think there'd be a lot of problems that would arise if you would allow these sorts of disputes to come up. I'm not a trial litigator, but it's my understanding that the vast majority of the time, requests relieved to amend the pleadings are entirely uncontroversial, that it's doing things such  And in those circumstances, I think we'd want to encourage parties to try to agree consent and not breed litigation every time an amendment is requested by forcing the parties to... Well, it wouldn't necessarily breed litigation. All you had to do was read it. Well, I think that if it was applied to us, but I think that you'd potentially have contention over that. But I think another issue... You wouldn't consent. Well, I think we'd have to see how that circumstance would play out. But more significantly here, there's nothing in the federal rules. If you take a look, there's absolutely nothing there that says that a party that's consented to the filing of an amended pleading can't then file a motion to strike within 21 days from service of the pleading, which is exactly what we did. So all that Blake consented to here was to the ministerial act of filing the amended answer. And the only effect of that was to relieve the state of its obligation under Rule 52 to obtain leave of court. But by consenting to the filing of the amended pleading, Blake didn't automatically forfeit  I suspect you knew that the common rule that motions to amend are granted freely and liberally and that by consenting, you're just saving everybody having to go in front of the judge to get permission to do it. Absolutely. And that was our belief. And you would think, or at least we would have thought, that if something exceptional was going on here, if there was an attempt being made to revive an affirmative defense two years into the litigation, that I would think it would be incumbent upon the party who's seeking our consent to make that known to us. And the record is clear, that never happened. And if that had happened, there might be a different case. But as far as we were aware, this was an entirely routine request for leave to amend after a lot of discovery had been conducted to conform the pleadings to the evidence. And in fact, if you take a look, aside from this affirmative defense, the other thing that amended answer did was change the categorical denial of all allegations in the initial answer to qualified admissions and denials of some allegations. But what I want to direct the court to, because I think this is important in several respects, is the decision this court issued in 985 in the Peterson case. And that is detailed on page 10 of our reply brief. And what happened in Peterson is that the defendant failed to plead a statute of limitations defense in its initial answer. And then attempted to add that, to raise it for the very first time three years later in response to an amended answer. And what the court held there was that even though the defendant there was allowed to file a new answer, in fact was allowed to do so as of right, the court held that the defense still had been waived. And what the court said was that the rule allowing a defense not made to be an original complaint to be made to an amendment has no application to a claim whose nature has not been substantially affected by the amendment. So here, just as in Peterson, Blake has never made any amendments that were anything other than cosmetic. And there was nothing new that we introduced at any point in time that was relevant in any way to this new exhaustion defense. And now turning back to this consent issue, I think that Peterson also requires the court to reject the state's position on this, that our consent allows them to raise new defenses for two reasons. One of them is what I was setting out earlier, which is that Peterson demonstrates that whether a party is allowed to file a new pleading, an amended pleading, is an entirely separate question from whether matters contained within that pleading are proper. Let me interrupt you a second, let me ask you this question. Do you think there's a limitation on an amended complaint when it's incented to versus when the judge orders it to be allowed? I think there's limitations in both of those things. You think there's a difference in those two? Yes. So if the judge allows it, they can do whatever they want to, but there's some limitation if it's done through consent? No, no, I think, sorry, I'm not sure if I was clear. I think the limitation applies in both circumstances. I think that if the judge invites an amended complaint, that doesn't allow the judge to override the state's waiver of an affirmative defense. Well, I know that a judge would deny the right to amend if it was patently frivolous, but do you think in every situation, the judge sits down and analyzes the allegations of a complaint or an answer to determine if ultimately they have merit before he allows an amendment? Well, so the issue here . . . I don't know any judge that would sit down and do that. Yes, but so the issue here, of course, is before reaching to whether the defense has back into the case. And if you look at the Supreme Court's decision in Wood v. Milliard, that case demonstrates that although a court has discretion to address certain issues sua sponte, it doesn't have authority to override a defendant's, the state's, affirmative waiver of that issue. So I don't think that the judge has authority, and by the way, if you take a look at pages 44 to 45 of the state's brief, they disavow any reliance on the judge's own sua sponte authority here. I think that's right. I don't think that the district court has the authority to revive these issues years into the litigation. And I think that if it did, as Judge Williams thought he did, that his authority to allow a new answer would trump even a defendant's waiver of that. My recollection of the record is that there had been very little discovery at that point. Am I correct in that record, or is there a lot of discovery already done? My recollection is there had been a great deal of discovery, but discovery had not yet closed. So there was at least, I think, a month and a half left, but I'm not certain of that, Your Honor. I'd have to check the record, too. But if it were correct that a judge's power to sua sponte override this sort of waiver was there, you'd essentially be transforming the exhaustion requirement into a sort of jurisdictional requirement that can be raised at any time and can't be waived. And that would be doing an end run around this court's decision in Anderson, which held that the exhaustion requirement isn't a jurisdictional requirement. That held that it is an affirmative defense that can be waived or forfeited if the state fails to timely raise it. Now, the other point I want to draw from Peterson is that in that case, as I said, there was an amended complaint, so an answer was allowed as a matter of right. An amended complaint because it wipes away the prior pleadings. The answer to the amended complaint operates as an original answer. Do you agree that a plaintiff's pleadings can be amended up to and during trial? Yes, but again, that doesn't establish whether any issues contained within the pleadings are proper. So, again, it's routine to do this for such matters as conforming the pleadings to the evidence. But I don't think that the kind of thing you can add to a pleading years into the litigation is a defense that has already been waived out of the case. And certainly, if Peterson held that you can't do this through what operates as an original answer to an amended complaint, then we think certainly an amended answer can't do it either. And I can't speak for why it is that it took the state several years to raise this. But I do think the timing here draws at least an inference that this was a conscious or deliberate decision. Mr. Ross here is represented throughout this litigation by the state's correctional litigation division. And it's very hard to think that a division of the state that exclusively litigates prisoner cases wasn't aware of the exhaustion requirements. The state hasn't said why it is they didn't raise that issue at any point. But it's their prerogative to choose not to raise it. And once that choice had been made, it can't be revived when the effect was to prejudice, Mr. Blake. Before you run out of time, I want to hear you on whether or not the exhaustion was accomplished. Absolutely. So the key thing I want to point out, and obviously we think exhaustion was accomplished here. And the key thing that I want to point out is that the district court and the state's position, at least on appeal, I think the state has actually shifted its position a bit. But they disagree about what it is that Blake should have done. They really take diametrically opposed positions. So the state's view on appeal is that Blake could have filed a standard grievance in the administrative remedy process. And Judge Williams rejected that. He said that consistent with Blake's own contentions, the ARP process was inapplicable to Blake's grievance because of the state's internal investigation. And that comports with the decision of every other judge who's considered Maryland's inmate grievance system. Judge Blake in Bogues, Judge Legge in Williams, and Judge Williams not only in this case but in a series of prior decisions. So what the district's court view was here took a different view. It said that Blake should have filed an original grievance with the inmate grievance office. And the problem with that is that the inmate grievance office, the IGO, is essentially an appellate body. And if you take a look at page three of the state's brief, the red brief, you don't have to take it from us. The state describes the IGO as an administrative appeals entity. And looking at the IGO regulations, they indicate that an inmate can file an original grievance when there's no other agency with power to investigate that grievance in the first instance. But here, Blake's grievance was fully investigated by the state's internal investigative unit. So this falls outside of the IGO's original jurisdiction. And the result of that internal investigation isn't subject to appeal or review by the IGO or any other agency in any way. So once that internal investigation was completed, there was nothing else that Blake could have done. There was no place else to go. Is there any relief available to him if he had gone through the IGO that was not available to him through the internal investigation? No. First of all, we don't think that the IGO would have been able to accept the filing in any way. There's no mechanism there. But no. There is a question, I think, as to what forms of relief the administrative remedy process or the IGO can award. There is reference in the regulations to the ability to award monetary relief for destruction of property. There's nothing indicating that it would have been possible for Blake to obtain damages remedy for personal harm, pain and suffering, injuries in medical care. What relief could this gentleman have obtained by virtue of the internal investigation? I'm not sure that there's anything also in terms of damages, the relief that we're seeking that he could have obtained from the internal investigation. Now what the internal investigation did do, aside from establishing the factual record and clarifying the facts here, was that it led to Madigan's termination, the other officer who was involved here. So the Supreme Court has said in Booth against Turner that you have to exhaust administrative remedies even if the process involved can't provide the particular remedy you're looking for, even if it can't provide monetary damages. But here there was no place else we could go. And the one last thing that you would accomplish through an administrative process would be development of this factual record, which we have from the internal investigation. So there was simply nothing else to be done. And we think that's the right reading of all of the law here. But even if there's any disagreement over that, the only way we could have gotten a definitive answer is if the state had raised this at the outset, as they were required to do. We would have had an opportunity to go back to exhaust any other administrative processes that they held out as available and then refiled the claims here. But because of the state's unexplained delay, Mr. Blake was unable to do that now as the statute of limitations kicked in. And if there are no further questions at this time, I will reserve the remainder of my time for rebuttal. Great. Thank you. Ms. Rice? May I please the court? This case is about a prisoner who took no steps to avail himself of either of two equally valid paths for administrative remedy that were held out by the state of Maryland, the Department of Public Safety and Correctional Services, and the Division of Corrections in 2007 when this incident occurred. The first was held out by the Division of Corrections itself, and that's the administrative remedy process, which is created by Division of Corrections policy, DCD 185-002. The second was created by the General Assembly when it enacted the statute, creating the jurisdiction over all inmate grievances and complaints in Section 10206 of the Correctional Services article. How about, do me a favor, don't let your voice die at the end of the sentence, because I'm not trying to hear everything you say. Sorry about that, Your Honor. Section 10206 of the Correctional Services article is plenary in its setup of the Inmate Grievance Office. In subsection A, it says that if an individual is confined in a correctional facility in the Division of Correction, or otherwise in the custody of the Commissioner of Correction, or confined in the Patuxent Institution, which in Maryland is the institution for the mentally ill, has a grievance against an official or employee of the Division of Correction or the Patuxent Institution, the individual may submit a complaint to the office within the time and in the manner required by regulations adopted to the office. Does any grievance about prison life, the regulations that the Inmate Grievance Office has adopted have specified that any, again, that any grievance can be had. This includes disciplinary matters, which the Administrative Remedy process specifically does not apply to. It includes, as my opposing counsel pointed out, property destruction matters, again, which the Administrative Remedy process does not apply to. And it includes use of force. How does the inmate know about this? How do they discover this? So all of the Administrative Remedies are summarized in the Inmate Handbook. Mr. Blake, in this case, admitted to, and there's evidence in the record, including a receipt that he signed, that he received the 2007 version of the Inmate Handbook on at least two occasions. In addition to the Inmate Handbook, the prison libraries have a copy of all of the directives in their full. What does the Handbook say? I mean, does it say if you have a grievance that you can file it and you're the, I mean, what's it say? I haven't looked at it. The Handbook actually summarizes the available processes, but then again, directs the inmate to the library. So the Handbook says that inmates may use the, and this is in 2007, so the 2007 Administrative Remedy Procedure policy applied, and that inmates may use the ARP for all types of complaints except the following, case management recommendations and decisions, Maryland Parole Commission procedures and decisions, disciplinary hearings procedures and decisions, and appeals of decisions to withhold mail. So by the Handbook's terms, this would apply to the use of force even if there were an What would that give an inmate that the internal investigation wouldn't give him? So the Inmate Grievance Office has a number of remedies, including being able to recommend to the Division of Correction the award of monetary damages, and that's in For personal injury? For personal injury, and that's under Code of Maryland 1207011 as it was enforced in 2007, and so that's at the end of my brief. I do not know if that is in the Handbook. The Handbook pages are reproduced at 403, the Joint Appendix, but the IGO process that is summarized in the Handbook, it doesn't, talks about the typical path, and the typical path a prisoner is required to exhaust the Administrative Remedy process provided by the Division of Corrections before a resort to the Inmate Grievance Office is allowed. So if the Administrative Remedy process is available, then the prisoner must fulfill the sequentially the Administrative Remedy process, and then the Inmate Grievance Office process. In that case, the Inmate Grievance Office serves as a second level of administrative appeal. However, there's an alternate scenario in which the Administrative Remedy process does not apply, and in that case, the prisoner can go straight to the Inmate Grievance Office, and that is not clearly spelled out in the 2007 Handbook, but that shouldn't be of concern to the Court because the Supreme Court has held that it is not what an inmate actually knows in terms of what the processes are available, but instead what processes are actually available. Here there's been no argument by Mr. Blake that he was prevented from accessing the more complete information about the Administrative Remedy process and the Inmate Grievance Office process that would have been available to him had he looked in the library. If I was a prisoner and I had filed an internal grievance, not an internal grievance, but there was an internal investigation going on into the conduct of officers, an official investigation in effect by the Department of Corrections, I don't know that I would think I'd have to do more than that. I mean, that to me seems to be the ultimate investigation. So what would have told him that's not enough? In 2007, I think it's particularly clear that the Administrative Remedy process applied to the use of force complaints. And it in fact says that both in the handbook and in the Administrative Remedy process directive. So you would know as a prisoner that this process is available to address your complaints about use of force. And if you would also know as a prisoner that an internal investigation is not aimed at any kind of relief for you, the prisoner. It is instead about whether or not the correctional officers involved or the Division of Corrections in general needs to take some kind of action. In this case, for example, Lieutenant Madigan was fired as a result. Which is what the internal investigation is doing. Correct. They're determining whether or not these officers ought to be disciplined, potentially fired, and that's what the internal investigation is doing. Right. So that's not a remedy that's applicable to the prisoner. The prisoner might have a number of remedies that they are seeking in addition or instead of having the officers disciplined. For instance, they might want to ensure that they are never assigned to under the control of those officers again to get a transfer. That's one of the available remedies. Or they may wish for the policy to change. Or they may wish for the May Grievance Office to recommend that there be a set of money damages to the Secretary. So all of those things are remedies, administrative remedies, that are available to the prisoner, are held out by the State of Maryland as options for the prisoner to pursue through the administrative remedy process. And it is not up to... Is the harm, so to speak, to the Department of Corrections that you're alleging the fact that he didn't tell you he wanted money before he brought suit for his injuries? Or is there some other prejudice to the Department of Corrections I'm not aware of? Well I'm not sure... I'm not aware of where the harm is. Well I think the harm is really in the process of the injury to the exhaustion requirement as a whole. Woodford v... The exhaustion is to put the Department of Corrections on notice and give them a chance to work this problem out itself within their own system before it comes to court, which is a benefit to everybody. I just can't figure out under the circumstances of this case where there's been an internal investigation, an officer's being fired, the best, most thorough investigation that could ever be done under these circumstances is done by the short of outside involvement. I just don't understand where the prejudice is to the Department of Corrections in this situation. Sure. I mean I think that the prejudice is that, for example, years passed before Mr. Blake brought suit between the incident and the filing of the suit and therefore we, the Division of Corrections, lost the opportunity to have contemporaneous medical examinations. In this case that's particularly an acute problem because Mr. Blake suffered from a So that opportunity was permanently foreclosed to the Department of Corrections. In addition, people's memories fade over time. While we do have the statements that were given... You're the one who waited two years to bring the exhaustion remedies defense, too. That's true. It must not have been too important. I can tell you that on my part when I was entered as counsel that that was pure inadvertence. I did have predecessor counsel. In this case the procedural posture was like many prisoner cases where an initial motion for summary judgment was filed soon after the complaint was brought. Some time passed and pro bono counsel was appointed for Mr. Blake and it was after that had happened and there had been some discovery that the mistake was identified. At that point, Lieutenant Ross did seek consent to amend the answer. Consent was given and it was not unconditional. I think this is important to note because instead Mr. Blake actually noted that he had control over how much consent to give and imposed a condition precedent, which wasn't seen in a version of the answer. It was instead asking for reciprocal consent to amend the pleading at a later date, which was given. And in the course of that actually, Lieutenant Ross conditioned his consent to the future amendment of the pleading on a co-commitment extension of the discovery deadline if one was necessary. I think at that point, if, for example, Mr. Blake wanted to add a new claim, was the example given in that communication, which appears in the record. I think at that point Mr. Blake was on full notice that an amendment might seek to add a new claim or defense and consented to do that. But even if you were to set aside the consent, Lieutenant Ross answered again in response to an amended complaint, a new answer, fresh, again asserting the defense. And circuits are split. I think here in Peterson versus airline pilots, there was some question about whether the earlier waiver had been knowing. And in footnote 12, this court said that when a defense is well established at law but simply overlooked, it can justly be said that the case should never have been brought and that no waiver should be found. So even in that case, there's this distinction that the liberal pleading standards fully encompass the idea that a defense could be discovered later and that that should be allowed. You agree, count, this is an egregious case, isn't it? A man has been escorted by one officer and then he's punched in the face, directly in the face several times, all these type things and these nature of injuries. This was an egregious case. Wouldn't you agree? Wouldn't you agree with that? I don't know if I would agree that it was egregious. The nature of the injuries were not ever at issue, but it was very unexpected. The force used by Lieutenant Madigan was inappropriate. He was immediately fired. You don't think it's egregious to hit someone square in their face several times? No, I do think that that is egregious. I just wanted to... To the point, that's many times a fatal blow. I mean, your bones in your face and your nose in particular is jammed back into your brain and kill you. That could happen. In this case, there's some evidence that the force of the blows were not at that level, but it was definitely quite egregious. And Lieutenant Madigan's conduct was completely unacceptable to somebody in his custody. And you fired him? We did. And plaintiff here cooperated with your investigation, didn't he? The record shows? The record shows that he gave one statement immediately following the incident, yes. You mean no one called him at all in your investigation? You conducted a whole investigation and only talked to him once? I believe that they only spoke with him that one time. There may have been two... If I remember correctly, there may have been two interviews. They were both within about a space of a week or two of the incident. Lieutenant Madigan was fired within two or three weeks. It was a very quick investigation. All of the witness accounts concurred. You were aware of the injuries, weren't you not? Your institution? Yes. Did you treat them? Yes, he was given treatment immediately. He actually refused treatment after examining... He was waiting to be examined, refused treatment. After he was transferred, he was transferred very shortly after. The facility he was at was the transitional facility in Maryland. So he was transferred to North Branch Correctional Institution shortly thereafter. He put in a sick call slip, but didn't attend the appointment. So I think his treatment was only Tylenol, but that was because of his own choice. And he subsequently asked for a transfer out of the jurisdiction, out of Maryland. Do you think that the question of whether or not... First of all, do you agree with that, let's just say there was some kind of waiver because they consented to your amended answer. Do you think the court had the authority to, notwithstanding that waiver, let's assume it was a waiver, decide that you had in fact, in this case, waived the exhaustion argument, defense? Did the court have the power to do that? Yes, they could have found that on the merits, but the district court did not find that on the merits. But it could, correct? It could have, yes. And do you think this court could review that decision whether or not that in fact was an exhaustion? Do we have the power to do that? I think that to the extent that it is a legal decision, there are many factual components of this waiver request, or of the waiver, including the procedural history, the potential for harm, and just on that point, the potential for harm, Mr. Blake overstates that his case when he says that he was definitively precluded from exhausting and then bringing within the statute of limitations. As the district court recognized, there are many elements to properly exhaust, and one of those elements is to timely file for exhaustion. And at least in the 2008 version of DCD 185-002, the timeline for an ARP is 30 days. The Maryland Code of Regulations sets forth the timeline for an inmate grievance office complaint, again, at 30 days. So it is completely speculative and probably counterfactual that Mr. Blake could have gone back and properly exhausted his administrative remedies, even if he had been given the opportunity to do so within the statute of limitations based on when he brought the case. And this makes sense. One of the other ways that you can have those remedies rendered unavailable to you is when you've completed your sentence. So there are often cases when prisoners have completed their sentence, and Chase BPA, the somebody could have completed their sentence, but they are still held to what remedies were available to them in prison, even if they can't go back now and exhaust those remedies because they're no longer within the custody of the Division of Corrections. So it's that level of speculation about the prejudice that you would have to reach and find to be prejudicial in order to find waiver of the exhaustion defense in this case. Could exhaustion be a jury issue? I think that if the facts were disputed, it could be, but here the facts are not disputed. The policies were all agreed on. There's no dispute as to Mr. Blake's conduct with respect to the administrative remedy process. There's no allegation that anyone from the Division of Correction prevented him from accessing that process. So any of those factual considerations that could, in some cases, go to the jury would not apply in this case. So here is the question of law? Because the facts aren't disputed, yes. You have no further questions? No, I think I understand your position. Thank you. Let's hear the reply. Thank you, Your Honors. There are a couple of points I want to touch on. Number one, I just want to clarify here, the issue here isn't whether the administrative remedy process can investigate a use of force. The issue is whether the administrative remedy process is available when there has been or is currently an investigation by the internal investigative unit. It's the commencement of the internal investigation that takes a complaint out of the normal administrative remedy process. Now, as far as the handbook goes, I believe Judge Traxler was asking about that. It's in the record here. The handbook's discussion of this process is entirely cursory, does briefly mention the IGO. It mentions the IGO only as a route of appeal from the administrative remedy process. It makes no mention, for instance, of the IGO's original jurisdiction. It tells inmates they have to file their ARP grievance within 30 days. Now, that's important because, as was observed earlier, the internal investigation started right away. This was an egregious incident. So what you would have had happen here is two concurrent investigations independently going on at the same time under the view the state is now advancing, one from the administrative remedy process, one from the IGO. You would potentially have those two processes competing for access to witnesses, to evidence. They could come up with . . . If he filed within 30 days, though, wouldn't that be all that he needed to do to preserve his remedies? I mean, whatever happened after that, I mean, it could have been a defective investigation or it could have gone on for some time, but the fact of him filing was what would have been pertinent. Well, the problem is he couldn't. That filing couldn't have been accepted, let alone entertained. There was nothing there to let them do that. And the point I'm trying to make now is that it's clear, you know, the state is now proffering that maybe you could have had both of these avenues available. They weren't. And the state law makes no provision for having two ongoing, competing, potentially conflicting investigations and for them to potentially reach conflicting results with no way to reconcile those. Now, there was some discussion of the process of consent, discussion between counsel. Aren't you conflating investigation with grievance? I mean, yes, there was a freestanding investigation going on. But your grievance has nothing to do with investigation. That's just saying, I'm agreed and I'm filing it and you do what you want, but I'm filing this. Why would he be precluded? Because there's a, isn't that sort of asylum, investigation going on, but this is my grievance. So there are other states, other jurisdictions, the way their system works. It does allow two ongoing investigations separately, one which is seeking inmate focused remedies and the other, which is the internal investigation. But Maryland law doesn't allow this. And that's what every judge who's examined the system has found, is that when there's an internal investigation, it takes this out of the administrative remedy process entirely. You can't file that grievance. And if you look at other provisions of Maryland law, the fact they have no way of reconciling these two independent investigations or coordinating them, making sure they don't conflict, we think just corroborates that. When you say you can't file it, what do you mean? Is there some statute that prohibits that or why do you, what's your basis to say that? Our view is that it just wouldn't have been accepted. And we based it on the numerous court decisions, which have looked at this process and found it wouldn't be accepted. And also the fact that after the events here, the ARP regulations were amended to add a specific provision, allowing them to accept grievances when there's an internal investigation ongoing and then dismiss those on procedural grounds. So later on, ultimately we fell into kind of a black hole in the system here. Maybe it wasn't anticipated, but there was no way to file a grievance. It couldn't have been accepted. Now there is, but that wasn't there at the relevant time period here. Now, I want to briefly discuss the fact that this, well, this was, I want to stress how egregious this was. This was egregious. Not only were the punches, Madigan punched Blake repeatedly with a key ring wrapped around his hands and he punched Blake repeatedly. He stopped, Ross continued holding him, restraining him in place and then punched him again. And the final thing that I want to address here, the state raised the problem if you don't have a quick administrative investigation of faded memories. We agree that it's valuable to channel these cases into the administrative process. We're wholeheartedly on board with that. I think there are a number of reasons to do so, but the way to do that is to enforce the requirements that an exhaustion defense be raised, completed at the outset of the case and not two years later. If there are no further questions, I'll submit the case. Thank you. Thank you. I'll ask the clerk to adjourn court and then we'll come down and re-counsel. This honorable court stands adjourned until tomorrow morning at 9 o'clock. God save the United States and this honorable court.
judges: William B. Traxler, Jr., Roger L. Gregory, G. Steven Agee